UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER HAGGERTY,

Plaintiff,

v.

KENT WAKEFIELD et al.,

Defendants.

Case No. 1:25-cv-1916

Honorable Maarten Vermaat

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## <u>Discussion</u>

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following four (4) IBC employees: Food Service Director **Kent Wakefield**, Facility Manager for Food Service **Unknown**

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Paige**, Assistant Deputy Warden **Sabrina Jones**, and Grievance Coordinator **Unknown Brooke**. (Compl., ECF No. 1, PageID.2.)[2]

Plaintiff alleges that on September 20, 2025, Defendant Wakefield called Plaintiff "love" and smiled at Plaintiff in conversation.[3] (*Id.*, PageID.3.) Plaintiff told Defendant Wakefield that he did not appreciate the comment and "other comments" Defendant Wakefield had made to Plaintiff since Plaintiff started working in the kitchen. (*Id.*) Plaintiff "reminded [Defendant Wakefield] that the inappropriate words and advancements made him very uncomfortable." (*Id.*) On September 29, 2025, Plaintiff alleges that he was walking towards the restroom when Defendant Wakefield stopped Plaintiff and asked, "How is my baby doing today?" (*Id.*) Plaintiff turned and walked away. (*Id.*)

On October 1, 2025, between 1:00 p.m. and 4:00 p.m., Plaintiff was working in the kitchen. (*Id.*) Plaintiff states that Defendant Wakefield came up behind him and Plaintiff "could feel [] Defendant's lips lightly touch his ear as [] Defendant whispered, 'Bye bae.'" (*Id.*) Plaintiff states that he "not only felt [] Defendant's lips on his ear, but could feel the warmth of [Defendant Wakefield's] breath in his ear as well." (*Id.*) Plaintiff states that this made him very uncomfortable. (*Id.*)

On October 3, 2025, Plaintiff spoke to Defendant Paige about Defendant Wakefield's comments. (*Id.*, PageID.4.) Plaintiff told Defendant Paige that "he felt by telling anyone about what was going on, that there would be some sort of retaliation on Defendant's part towards []

---

[2] The Court notes that Plaintiff previously filed a civil rights action in this Court against Defendant Wakefield regarding the same conduct at issue in the present action. *See Haggerty v. Wakefield*, No. 1:25-cv-1351 (W.D. Mich). In that case, the Court dismissed the action without prejudice. *See* J., *id.*, (ECF No. 7).

[3] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

Plaintiff." (*Id.*) Defendant Paige told Plaintiff that she would speak to Plaintiff at a later date, but Plaintiff did not hear back from Defendant Paige. (*Id.*)

On October 6, 2025, Plaintiff filed a Prison Rape Elimination Act (PREA) grievance regarding "Defendant Wakefield's comments and advancements." (*Id.*, PageID.6.) Plaintiff's PREA grievance was denied as untimely by Defendant Brooke, and Defendant Jones "signed off" on the decision. (*Id.*, PageID.6–7.) Plaintiff claims that "these acts are a violation of Plaintiff's due process according to policy directive 03.02.130." (*Id.*, PageID.7.) Plaintiff states that his PREA grievance should not have been denied as untimely because, under "MDOC policy directive 03.02.130," grievances filed in an "untimely manner … shall not be rejected if there is a valid reason for the delay." (*Id.*) Plaintiff claims that he "was indeed in fear of retaliation by [] Defendant if he were to file a grievance against Defendant Wakefield due to [Defendant Wakefield's] title and position [as] Food Service Director." (*Id.*)

Plaintiff states that, after filing the PREA grievance, he still had to work under Defendant Wakefield's direct supervision. (*Id.*) Plaintiff alleges that Defendant Wakefield "continued his harassment for a period of another week and a half (October 6, 2025 [to] October 16, 2025)." (*Id.*) Plaintiff asserts that he suffers from "restless sleep and nightmares involving Defendant Wakefield." (*Id.*, PageID.12.)

On October 21, 2025, Plaintiff spoke to non-party mental health professional "Ms. Hickey" about the issues that Plaintiff was having with Defendant Wakefield. (*Id.*, PageID.8.) "After the meeting, Ms. Hickey recorded the issues [that] Plaintiff was encountering." (*Id.*) After Plaintiff's conversation with Ms. Hickey, he states that he no longer received a detail callout for his job in the kitchen. (*Id.*) Plaintiff states that he is not sure why he was taken off of kitchen detail, but that he "needs a job and the money to be able to purchase items that he needs as they arise." (*Id.*)

On October 24, 2025, Plaintiff was placed in segregation. (*Id.*, PageID.11.) Plaintiff states that he is not "aware of any rationale for his removal from 6 Block at [IBC]… to segregation." (*Id.*) Plaintiff asserts that "this removal of Plaintiff was due to the PREA grievance he submitted, in his opinion, in retaliation to his grievance." (*Id.*) Plaintiff alleges that his placement in segregation "deprived [] Plaintiff of all privileges he was able to enjoy such as going to the library, law library, meals, gym, etc." (*Id.*) Plaintiff asserts that "it is evident that policy and procedures were not followed by the MDOC and its staff; Plaintiff was punished for whistleblowing." (*Id.*)

Plaintiff further alleges that each time Defendant Wakefield approached him, he noticed Defendant Wakefield's body camera was in "sleep mode," which Plaintiff reported because it is against "policy directive 04.04.160." (*Id*, PageID.8.) On November 16, 2025, during an interview with non-party Sergeant Isaacs, Plaintiff asserts that Sergeant Isaacs "confirmed to Plaintiff that Defendant Wakefield's [] body worn camera was in sleep mode on the date of [the] incidents." (*Id.*, PageID.10.) Plaintiff asserts he made "several attempts" to get information on the outcome of the investigation that occurred when Plaintiff reported Defendant Wakefield's inappropriate advances. (*Id.*, PageID.12.) On December 19, 2025, "the Sergeant told Plaintiff that he interviewed one or two witnesses and his report would be forwarded on to the next step soon." (*Id.*) Plaintiff states that he "does not have that report nor the findings of the [body worn camera]." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation, Eighth Amendment rights, and Fourteenth Amendment due process rights. As relief, Plaintiff seeks compensatory and punitive damages and seeks to have Defendant Wakefield relieved of his duties. (*Id.*, PageID.12–13.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment Claim

The Court construes Plaintiff's complaint to assert an Eighth Amendment sexual harassment claim against Defendant Wakefield.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. "As the Supreme Court has stated, not every malevolent touch by a prison guard gives rise to a federal cause of action." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1094 (6th Cir. 2019) (internal quotation marks omitted) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). To satisfy the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty*, 915 F.3d at 1095 (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the United States Court of Appeals for the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (finding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24,

27 (6th Cir. 2003) (holding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). In contrast, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

Further, the Sixth Circuit has held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. Nov. 17, 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).

In this case, Plaintiff alleges that Defendant Wakefield made sexual comments to Plaintiff on several occasions and, on one occasion, Plaintiff "could feel [] Defendant's lips lightly touch his ear" as Defendant Wakefield whispered, "Bye bae" to Plaintiff. (Compl., ECF No. 1, PageID.3.) The Court does not minimize Plaintiff's experience; however, the facts as alleged in the complaint, construed in a light most favorable to Plaintiff, show that Plaintiff was subject to verbal harassment, which does not implicate the Eighth Amendment. *See Ivey*, 832 F.2d at 954–55. Although Plaintiff alleges that Defendant Wakefield physically touched Plaintiff's ear with his lips on one occasion, "not every malevolent touch by a prison guard gives rise to a federal cause

of action." *Rafferty*, 915 F.3d at 1094. Moreover, Defendant Wakefield's comments, while offensive and unprofessional, do not evidence the sort of coercive sexual demand at issue in *Rafferty*. 915 F.3d at 1095–96.

To the extent that Plaintiff claims that Defendant Wakefield's comments violated prison policy, he fails to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982), and § 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (holding that a parole board's failure to follow state procedural standards could constitute a violation of state law but not federal law).

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendant Wakefield and this claim will be dismissed.[4]

**B. Fourteenth Amendment Due Process Claim**

Plaintiff raises a claim alleging that his Fourteenth Amendment right to due process was violated when his PREA grievance was denied as untimely by Defendant Brooke, and when the denial was upheld by Defendant Jones.

Where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be

[4] Plaintiff also asserts that Defendant Wakefield's body worn camera was in sleep mode every time he made inappropriate sexual comments to Plaintiff, and that turning the body worn camera to sleep mode was against MDOC policy. (Compl., ECF No. 1, PageID.8–10.) It is unclear what type of claim that Plaintiff is intending to assert with these facts. But, as stated above, alleged violations of MDOC policy do not state a claim under § 1983. *Lugar*, 457 U.S. at 924; *see Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.

active unconstitutional behavior. *Id*. Failing to intervene on a prisoner's behalf or merely denying an administrative grievance to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior *Id.* Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance or failed to respond to a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (holding that failing to properly respond to a grievance is not a constitutional violation); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Smith v. Dawdy*, No. 23-2043, 2024 WL 4925843, at *5 (6th Cir. Sept. 13, 2024) ("[T]here is no constitutional right to unfettered access to grievance procedures, or to a response to every grievance.")

Moreover, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. Nov. 1, 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, the denial of his PREA grievance as untimely, and the decision to uphold the denial, did not deprive Plaintiff of due process.

And to the extent that Plaintiff claims Defendant Brooke's denial of his grievance, and Defendant Jones's decision to uphold the denial, violated prison policy, he fails to state a claim under § 1983. As explained above, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," *Lugar*, 457 U.S. at 924, and § 1983 does not provide redress for a violation of state law. *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim against Defendants Brooke and Jones and this claim will be dismissed.

**C. First Amendment Retaliation Claim**

Plaintiff also raises a First Amendment retaliation claim regarding being taken off kitchen detail, being placed in segregation, and Defendant Wakefield's continued harassment following Plaintiff's reports of Defendant Wakefield's alleged harassment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (finding that, in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff alleges that on October 3, 2025, he told Defendant Paige about Defendant Wakefield's inappropriate sexual comments and told her that he felt there would be "some sort of retaliation on Defendant's part towards Plaintiff." (Compl., ECF No. 1, PageID.4.) On October 6, 2025, Plaintiff filed a PREA grievance against Defendant Wakefield. (*Id.*, PageID.6.) After filing the PREA grievance, Plaintiff claims that Defendant Wakefield "continued his harassment" from October 6, 2025 to October 16, 2025. (*Id.*, PageID.7.) On October 21, 2025, Plaintiff spoke to non-party Ms. Hickey about Defendant Wakefield's comments. (*Id.*, PageID.8.) After the conversation with Ms. Hickey, Plaintiff alleges that he no longer received a detail callout for his kitchen job. (*Id.*) Then, on October 24, 2025, Plaintiff was placed in segregation for an unknown reason. (*Id.*, PageID.11.) Plaintiff asserts that "this removal of Plaintiff was due to the PREA grievance he submitted, in his opinion, in retaliation to his grievance." (*Id.*)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th

Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Verbal grievances to prison officials also constitute protected activity. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).

As to whether an adverse action was taken against Plaintiff, the Sixth Circuit has held that placement in administrative segregation can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474; *Herron*, 203 F.3d at 416 (finding that placing an inmate in segregation "could deter a person of ordinary firmness from exercising his First Amendment rights.") (quoting *Dunham-Bey v. Holden*, No. 98-1522, 198 F.3d 244, 1999 WL 1023730, at *2 (6th Cir. Nov. 5, 1999)). However, removal from a prison job does not constitute an adverse action for purposes of a retaliation claim because prisoners have "no constitutional right to prison employment or a particular prison job." *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. Sept. 21, 2001); *Davis v. Walton*, No. 1:12-CV-258, 2013 WL 320206, at *8 (W.D. Mich. Dec. 27, 2013), *R & R adopted by order* (W.D. Mich. Jan. 29, 2014); *cf. Ivey*, 832 F.2d at 955. Plaintiff also alleges that Defendant Wakefield "continued his harassment" of Plaintiff for another week and a half following Plaintiff's filing of the PREA grievance. (*See* Compl., ECF No. 1, PageID.7.) It is uncertain whether Defendant Wakefield's continued harassment constitutes an adverse action because Plaintiff does not allege that Defendant Wakefield's harassment became worse or changed in some way; instead, Plaintiff only alleges that the same harassment that had been occurring before continued to happen. Regardless, at this stage of the proceedings, the Court assumes that Plaintiff's placement in segregation and Defendant Wakefield's continued harassment constituted adverse actions. However, Plaintiff's allegations regarding the third element of his retaliation claim—retaliatory motive—fall short because Plaintiff does not allege any facts to suggest that Defendant Wakefield knew about the PREA grievance, nor that Defendants had any involvement in, or knowledge of, Plaintiff's placement in segregation.

Plaintiff fails to allege sufficient facts to show that his filing of a PREA grievance against Defendant Wakefield and his verbal complaints to Defendant Paige and non-party Ms. Hickey regarding Defendant Wakefield's inappropriate comments, were substantial or motivating factors in Plaintiff's placement in segregation or in Defendant Wakefield's continued harassment of Plaintiff. (*See* Compl., ECF No. 1, PageID.4, 6, 8, 11.) "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, and a claimed constitutional violation must be based upon active unconstitutional behavior, *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff does not allege that Defendant Wakefield, Defendant Paige, or non-party Ms. Hickey were involved in Plaintiff's placement in segregation. Nor does Plaintiff allege that Defendant Wakefield was aware of Plaintiff's PREA grievance or complaints to Defendant Paige and Ms. Hickey. (*See* Compl., ECF No. 1, PageID.4, 6, 8, 11.)

At most, Plaintiff's allegations suggest only temporal proximity between Plaintiff's protected conduct—Plaintiff's PREA grievance and verbal complaints to Defendant Paige and non-party Ms. Hickey—and Plaintiff's placement in segregation and Defendant Wakefield's continued harassment (*see* Compl., ECF No. 1, PageID.4, 6, 8, 11); however, although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. Mar. 10, 2020) (holding that allegations of

temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Instead, Plaintiff's allegations of retaliation against Defendants Wakefield and Paige are conclusory and do not provide supporting facts to suggest that they had any involvement in Plaintiff's placement in segregation. Also, Plaintiff does not put forth facts to suggest that Defendant Wakefield's continued harassment following the filing of the PREA grievance was in retaliation for filing the PREA grievance. Again, Plaintiff's allegations show, at most, temporal proximity between Plaintiff's protected conduct and Defendant Wakefield's continued harassment of Plaintiff. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey*, 420 F.3d at 580 (citation omitted); *see Murray*, 84 F. App'x at 556; *Lewis*, 20 F. App'x at 459. Therefore, Plaintiff's First Amendment retaliation claims against Defendants Wakefield and Paige will be dismissed for failure to state a claim.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 17, 2026

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge